## High Concrete Structures Inc. v. National Union Fire Insurance Company of Pittsburgh, PA

*Charles J. Bloom,* for plaintiff.
*Eric R. Brown,* for defendant.

SHEPPARD JR., *J.,* February 3, 2004—Before the court are the preliminary objections of defendant, National Union Fire Insurance Company of Pittsburgh, PA (NUFIC), to the complaint of plaintiff High Concrete Structures Inc. (HCS). NUFIC was HCS' insurer under a certain general commercial liability insurance policy. HCS brought this declaratory judgment action because the policy required NUFIC to defend HCS in any suit seeking damages from HCS for "malicious prosecution."

HCS is the plaintiff in certain patent litigation[1] presently pending in the United States Federal Court for the Eastern District of Pennsylvania (the underlying action), in which HCS has asserted claims for patent infringement against its competitors, New Enterprise Stone & Lime Co. Inc. and Robbins Motor Transportation Inc. (collectively NESL). NESL has counterclaimed alleging, inter alia, that HCS' patent is invalid because HCS made numerous misrepresentations to the Patent and Trademark Office (PTO) in order to obtain the patent.

In this action, HCS seeks to have NUFIC pay its defense costs with respect to this counterclaim, alleging

---

1. HCS holds a patent for a "loading fixture" that enables one to load wide cargo onto a flatbed in a tilted position, thereby reducing the "effective width" of the cargo and causing it not to be labeled and treated as a "wide load" (the patent).

that a patent invalidity claim is akin to an abuse of process claim and an abuse of process claim is included within the policy's coverage for "malicious prosecution" claims.[2]

## I. THE INSURER'S DUTY TO DEFEND

In order "to decide whether a duty to defend exists[, a court] must interpret the insurance policy to determine the scope of the coverage [and] must analyze the complaint filed against the insured to determine whether the claims asserted potentially falls [sic] within that coverage." *Biborosch v. Transamerica Insurance Co.,* 412 Pa. Super. 505, 509-10, 603 A.2d 1050, 1052 (1992). See also, *Mutual Benefit Insurance Co. v. Haver,* 555 Pa. 534, 538-39, 725 A.2d 743, 746 (1999). Applying this analysis, this court finds that NESL's amended answer in the underlying action does not contain claims that potentially fall within the scope of the policy's coverage. Thus, NUFIC does *not* have a duty to defend HCS in the underlying litigation.

### A. The Court Will Not Reach the Issue Whether an Abuse of Process Claim Is Included Within the Term "Malicious Prosecution"

HCS' argument, that the term "malicious prosecution" as used in the policy encompasses claims for "abuse of

---

2. Plaintiff does not and cannot claim that the allegations of the patent invalidity claim are equivalent to a malicious prosecution claim because the underlying litigation is still pending. One of the requirements for bringing a malicious prosecution claim is that the counterclaim in the underlying litigation has been resolved in favor of HCS. See 42 Pa.C.S. §8351(a)(2).

process," is supported by a scholarly opinion of the Delaware Superior Court, in which that court applied Pennsylvania law to interpret an insurance policy similar to the one at issue in this case. See *Toll Brothers Inc. v. General Accident Ins. Co.,* 1999 WL 744426 (Del. Super. August 4, 1999), *aff'd without opinion,* 765 A.2d 953 (Del. 2000). But, recently, courts in other jurisdictions have refused to read the term "malicious prosecution" so broadly in cases involving similarly worded insurance policies. See *Global Naps Inc. v. Federal Ins. Co.,* 336 F.3d 59 (1st Cir. 2003) (applying New York law); *Pennsylvania Pulp & Paper Co. v. Nationwide Mut. Ins. Co.,* 100 S.W.3d 566 (Tex. App. 2003) (applying Texas law); *William J. Templeman Co. v. Liberty Mut. Ins. Co.,* 316 Ill. App. 3d 379, 735 N.E.2d 669 (2000) (applying Illinois law). Furthermore, Pennsylvania courts have always maintained—in a tort law context—that there is a clear distinction between the tort of abuse of process and the tort of malicious prosecution, the latter of which is now codified in the "Dragonetti Act." See *e.g., McGee v. Feege,* 517 Pa. 247, 253, 535 A.2d 1020, 1023 (1987); *Werner v. Plater-Zyberk,* 799 A.2d 776, 785 (Pa. Super. 2002); *Al Hamilton Contracting Co. v. Cowder,* 434 Pa. Super. 491, 498-99, 644 A.2d 188, 191-92 (1994). See also, 42 Pa.C.S. §8351.

In order to resolve this case, this court need not decide how broadly to construe the term "malicious prosecution," as used in commercial general liability policies. Instead, the court will focus on the issue whether the patent invalidity claim asserted by NESL may be viewed as an abuse of process claim.

## B. A Patent Invalidity Claim Is Not Akin
## To an Abuse of Process Claim

A patent holder that had an improper motive in bringing a civil action for patent infringement may be charged with the state law tort of abuse of process by way of a counterclaim in the infringement action. See *Trueposition Inc. v. Allen Telecom Inc.,* 2003 WL 151227 (D. Del. January 21, 2003); *Bayer AG v. Sony Electronics Inc.,* 229 F. Supp.2d 332 (D. Del. 2002), *aff'd without opinion,* 2003 WL 22961198 (Fed. Cir. December 5, 2003). However, a patent holder that obtained a patent from the PTO by improper means may not be charged with abuse of process.

"[T]he federal administrative process of examining and issuing patents, including proceedings before the PTO's boards, is not subject to collateral review in terms of the common law tort of abuse of process. . . . An additional state action would be an inappropriate collateral intrusion on the regulatory procedures of the PTO . . . and is contrary to Congress' pre-emptive regulation in the area of patent law." *Abbot Laboratories v. Brennan,* 952 F.2d 1346, 1357 (Fed. Cir. 1992).[3]

In the underlying action, NESL's claim for patent invalidity is based on HCS' allegedly improper conduct before the PTO,[4] so that claim cannot, under the doc-

---

3. In *Neumann v. Vidal,* 710 F.2d 856 (D.C. Cir. 1983), which is cited by HCS, the court permitted an abuse of process claim to go to trial even though it was premised upon a claim filed in federal court that was later converted to a (unsuccessful) patent protest before the PTO. However, the *Neumann* court did not address the federal pre-emption issue.

4. HCS argues that the gravamen of NESL's counterclaim is that HCS brought the underlying litigation with improper motive, but

trine of federal pre-emption, be recast as an abuse of process claim. Therefore, even if the term "malicious prosecution" in the policy encompasses a claim for abuse of process, NESL's patent invalidity counterclaim may not be deemed an abuse of process claim. Thus, NUFIC has no duty to defend HCS with respect to NESL's counterclaims.

## CONCLUSION

For the foregoing reasons, defendant's preliminary objections to plaintiff's complaint are sustained and the complaint should be dismissed. A contemporaneous order consistent with this opinion will be entered of record.

## ORDER

And now, February 3, 2004, upon consideration of the preliminary objections of defendant, plaintiff's response in opposition, the respective memoranda, all other matters of record, and in accord with the opinion being filed contemporaneously, it is ordered that the preliminary objections are sustained and the complaint is dismissed.

---

NESL's allegations, as this court reads them, do not support such an argument and are instead focused on HCS' activities before the PTO.